

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

_____

## No. 08-25-00038-CV

_____

Victoria Trading Company, LLC, MJR Investments, Ltd, Jana L. Bickham, as Independent Executor of the Estate of Joe P. Pritchett, Deceased, Jana L. Bickham as Independent Executor of the Estate of Jean Ann, Pritchett, Deceased, Tom E. Johnson LP, PEC Minerals LP, PEO Permian, LLC, Primexx Resource Development LLC, BPP Acquisition LLC, Blairbax Energy, LLC and Callon Petroleum Company, **Appellants**

v.

Tami Victoria Gurnard, George A. Crain, Kay Sheldon Williamson, Ava Williamson Gallagher, Amalie Williamson Rosenfeld, Arwen Williamson Lee, Darla Duncan Ferguson a/k/a Darla Rue Tigers Duncan Ferguson, North Central Texas Resources, LLC, Rachel Kirkland Goode, Timothy H. Colvin, Steven Randall Allen, William (Bill) Revis Allen, Ann Delores Archer, Holt Archer, a Testamentary Beneficiary and/or assign of E.H. Archer, Aaron Christopher Brady, Richard James Brady, Grace Brothers, et al., **Appellees**

On Appeal from the 143rd District Court
Reeves County, Texas
Trial Court No. 25-01-25513-CVR

# MEMORANDUM OPINION

This appeal examines the validity of a 1920 conveyance of a wife's separate real property to her husband and Appellants' attempt to invalidate it. After the conveyance remained unchallenged for more than a century, title disputes arose and the parties filed competing traditional summary judgment motions. Appellants challenge the trial court's adverse summary judgment rulings. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves competing title claims to mineral interests of Section 267, Block 13, H&GN RR Co. Survey (Section 267), located in Reeves County, Texas. The parties' respective title claims derive from a conveyance of Section 267 from a wife, Norma Houssels Archer (Norma), to her husband, Eskew Harold Archer (E.H.).

In 1909, E.H. acquired the entirety of Section 267. He then conveyed all his interest in Section 267 to Norma on January 4, 1912. These conveyances are not contested.

On March 1, 1920, Norma executed a deed conveying all her interest in Section 267 to E.H., which was recorded at Vol. 49, Page 577, in the Deed Records of Reeves County, Texas (the 1920 deed). Under the coverture laws in effect at the time, the deed required Norma to acknowledge the conveyance privily[1] before a notary and required E.H. to join in the conveyance. The 1920 deed satisfied both statutory requirements. Regarding the privy acknowledgment, the 1920 deed stated:

---

[1] "Privily" refers to the private, "privy" examination required when a married woman conveyed her separate property. *See Riley v. Wilson*, 86 Tex. 240, 241–42 (1893). It was an examination conducted privately, apart from her husband and before an officer, to confirm that she acknowledged the instrument as her act and deed, signed it willingly, and did not wish to retract it. *Id*. at 242. It was required "to secure to her knowledge of the true character and effect of the instrument, to secure her freedom of action, and to protect her from any influence, coercive in its nature, which might be exercised by her husband or any other person." *Id*.

> Norma H. Archer, wife of the said E. H. Archer, having been examined by me privily and apart from her husband, and having the same by me fully explained to her, she, the said Norma H. Archer, acknowledged such instrument to me to be her act and deed, and she declared that she willingly had signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Regarding joinder, the 1920 deed provided:

> THIS INSTRUMENT, made the first day of March in the year of our Lord one thousand nine hundred and twenty Between E.H. Archer and Norma H. Archer, husband and wife, County of Los Angeles, State of California, the parties of the first part, and E.H. Archer, the part of the second part[.]

Although the parties agree that the 1920 deed complied with the statutory requirements, the validity of the 1920 deed is the crux of this appeal.

Upon E.H.'s death in 1945, Norma acquired one-half interest of Section 267, while the remaining half passed to E.H.'s surviving siblings. Appellants claim succession through Norma, and Appellees claim succession through E.H. The 1920 deed remained unchallenged until the underlying proceedings.

On March 24, 2021, Appellants asserted claims to quiet title, trespass to try title, and sought declaratory relief. Appellants alleged that a "conveyance of a wife of her separate property to her husband could only be accomplished, if desired, by conveyance from husband and wife to a nominee such as a trustee who would then convey to the husband," and that because this did not occur, the 1920 deed "was void and ineffective to convey [the] property to E.H." Appellants claimed ownership of the disputed mineral interests in Section 267 as Norma's successors in interest.

Appellees pleaded not guilty to the trespass to try title claims, denied the remaining claims, and asserted the affirmative defenses of limitations, laches, and waiver. Some Appellees also filed

3

counterclaims. Appellants jointly moved for traditional summary judgment.[2] Appellees filed competing summary judgment motions on their title counterclaims and affirmative defenses.[3] The trial court heard the competing motions on March 9, 2022, and took the motions under advisement. On October 17, 2023, the trial court granted Appellees' summary judgment motion on their title counterclaims and affirmative defenses, and denied Appellants' summary judgment motion on their title claims.

Appellees later jointly moved to sever the title claims resolved by summary judgment. The trial court granted severance, declaring its rulings on the competing summary judgment motions as final appealable judgments "on the issues set forth" in those motions. This appeal followed.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

### A. Coverture laws and *Riley v. Wilson*

We begin with an overview of the development of coverture laws. Under early coverture principles, the sole management and control of a married woman's separate property belonged to her husband. *See* Tex. Rev. Civ. Stat. art. 4621, 4624 (1911); *Graham v. Struwe*, 76 Tex. 533, 533 (1890) (recognizing a married woman's disabilities resulting from coverture laws). At that time, a wife was under a legal "disability" to contract and was "without express statutory power to contract for the benefit or preservation of her separate estate." *Red River Nat. Bank v. Ferguson*, 109 Tex. 287, 289 (1918). Eighteenth century common law imposed conditions for a married woman's deed to be valid. *Riley v. Wilson*, an 1893 Texas Supreme Court decision, addressed three certified questions, the first of which asked:

> Can a married woman make a gift of her separate real estate to the husband, by
> joining with her husband in a conveyance of the land to a third party, complying

---

[2] Defendants Baxsto, LLC and Buffy Energy, LLC joined Appellants' motion for summary judgment but are not parties to this appeal.

[3] All Appellees eventually joined.

fully with the law as to privy examination and acknowledgment, and thus causing such third party to reconvey the land to the husband?

86 Tex. at 241. The Court answered that question in the affirmative. *Id*. at 243. It provided that a wife could validly convey her separate property only if: (1) the wife "acknowledge[d] the instrument to be her act and deed, and state[d] that she willingly signed it and wishe[d] not to retract, after it has been shown and explained to her, privily and apart from her husband, by the officer taking her acknowledgment[;]" and (2) the husband "join[ed] in the conveyance in order that he may protect the wife from undue influence[.]" *id*. The Court explained that the requirements of privy and joinder were intended to protect a wife from undue influence; the Court stated:

> That the deed executed was intended for the benefit of the husband does not of itself render it invalid; for in the exercise of lawful power to convey, whether that be given by the statute, or an instrument securing to a wife what is known as an 'equitable separate estate with power of disposition, the relation of husband and wife does not prevent the latter from making a conveyance intended for the benefit of the former. 'A married woman having this general power of disposing of her separate property, the question naturally arises whether she may bestow it, by appointment or otherwise, upon her husband, or whether the legal disability attaches to such a transaction. Upon this subject the doctrine is now firmly established in equity that she may bestow her separate property, by appointment or otherwise, upon her husband, as well as upon a stranger; but at the same time courts of equity examine every such transaction between husband and wife with an anxious watchfulness and caution, and dread of undue influence.' That a wife, joined by her husband, through a deed executed as the law requires for the conveyance of her separate property, may make a valid gift to a third person, cannot be doubted; and when she thus executes a deed to a third person, intending that he shall convey to her husband, she has received all the protection the law deems essential to her prudence of action and power to convey.

*Id*. at 242–43 (cleaned up).

In 1911, the Texas Legislature codified these two requirements by enacting Article 1114, which provided:

> Conveyance of separate lands of the wife, how made.—The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her

5

privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded[.]

Tex. Rev. Civ. Stat. art. 1114 (1911) (repealed 1963). Then in 1913, the Legislature enacted what the Texas Supreme Court later characterized as a "distinct change" in women's property rights by granting a married woman the sole authority to manage, control, and dispose of her separate property. *Ferguson*, 109 Tex. at 289. Article 4621, the Married Woman's Act of 1913 (the 1913 Married Woman's Act), was amended to provide, in pertinent part:

All property of the wife both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired shall be the separate property of the wife. During the marriage the husband *shall have the sole management, control and disposition of his separate property, both real and personal, and the wife shall have the sole management, control and disposition of her separate property, both real and personal*; provided, however, the joinder of the husband in the manner now provided by law for conveyance of the separate real estate of the wife shall be necessary to an encumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this act; provided, also that if the husband shall refuse to join in such encumbrance, or conveyance, or transfer of such property the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or vacation, upon satisfactory proof that such encumbrances, conveyance or transfer would be advantageous to the interest of the wife, to make an order granting her permission to make such encumbrance, conveyance or transfer without the joinder of her husband, in which event she may encumber, convey or transfer said property without such joinder.

Tex. Rev. Civ. Stat. art. 4621 (1913). Although the statutory requirements of privy and joinder remained in place, Texas law now recognized that the "sole management, control and disposition" of a wife's separate property belonged to the wife rather than her husband. *Id*.

In 1925, the Texas Legislature recodified Article 1114 as Article 1299, retaining both the privy and joinder requirements and the recognition of a wife's "sole management, control and disposition" of her separate property. *See* Tex. Rev. Civ. Stat. art. 1299 (1925) (repealed 1963). Article 1299 was later repealed in 1963. *See id*.

Nearly two decades later, the Texas Supreme Court declared Article 1229 unconstitutional in *Wessley Energy Corp. v. Jennings*, stating:

> There is no question that former article 1299 is unconstitutional. The statute violates the Equal Protection Clause of the Fourteenth Amendment. By requiring a wife to obtain her husband's joinder before conveying real estate embodies the gender-based discrimination found unconstitutional absent a showing that the classification is tailored to further an important governmental interest. The statute also violates Article I, section 3 of the Texas Constitution[.]

736 S.W.2d 624, 627 (Tex. 1987) (internal citations omitted).

### B. Standard of review

We review a trial court's summary judgment ruling de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional summary judgment is proper when a movant establishes that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(i); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). When, as here, the parties file competing summary judgment motions and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and render the judgment the trial court should have rendered. *Id*.

## III. ANALYSIS

In two issues, Appellants challenge the trial court's summary judgment rulings. In Issue One, Appellants contend the trial court erred by denying summary judgment on their title claims and granting summary judgment in favor of Appellees on their title counterclaims. In Issue Two, Appellants maintain that because the 1920 deed is void, the trial court erred in granting summary judgment on Appellees' affirmative defenses of limitations, laches, and waiver.

### A. The trial court's summary judgment rulings on the title claims

In their first issue, Appellants assert that the trial court erred by denying their summary judgment motion on their title claims and granting summary judgment in favor of Appellees on

their title counterclaims. Appellants contend that the 1920 deed is void because E.H. acted as both grantor and grantee in violation of the common law prohibition against contracting with oneself and Norma did not convey the property to a third party who then reconveyed it to E.H.—a process Appellants assert *Riley* compelled.

According to Appellants, "the reason for serving as grantor matters not; it is that he serves as grantor that destroys Appellees' title claims." Appellants heavily rely on common law contract principles and the Texas Supreme Court's decision in *Riley*. Appellants place particular emphasis on the following passage from *Riley*:

> Capacity of husband and wife to take and hold property in separate right being equal in this state, if the wife was not under disability to convey her lands except by a deed in which her husband joins, her power to convey to him without the intervention of a third person would be as clear as is his power to convey directly to her; but, as she can convey only by a deed in which he joins, they cannot make a deed directly to him, *for no person can contract with himself.*

*Riley*, 86 Tex. at 241 (emphasis added). Appellants argue that this language confirms the common law's prohibition against contracting with oneself and that a married woman could only convey her separate property to her husband through a third-party intermediary or trustee, and that failure to follow this mechanism rendered the 1920 deed void. We disagree. We reject that *Riley* compelled an additional third-party requirement and find the 1920 deed valid.

We begin by noting that at the time *Riley* was decided, the legal identity of husband and wife was merged, a wife lacked general contractual capacity, and the husband retained sole management, control, and disposition of the wife's separate property. *Whitney Hardware v. McMahan*, 111 Tex. 242, 244 (1921) (recognizing that prior to 1913, a wife had no general power to contract); *Graham*, 13 S.W. at 381; *Riley*, 86 Tex. at 241. Although the law still required the husband's joinder, the legal landscape governing a wife's property rights had materially changed by the time the 1920 deed was executed, and the circumstances no longer matched those existing

8

when *Riley* was decided. In 1918, the Texas Supreme Court explained that the 1913 Married Woman's Act, "introduce[d] a distinct change in the law in respect to the control and management of the wife's separate estate. Whereas under the former law its sole management was given to the husband, such management, together with its sole control and disposition is by the act given to the wife, with the proviso that the husband's joinder shall be necessary to a conveyance or encumbrance." *Ferguson*, 109 Tex. at 289; *McMaham*, 111 Tex. at 244–45 (recognizing that the 1913 Married Woman's Act "enlarged [a wife's] rights and powers: first by giving to her the sole management, control and disposition of her separate property, both real and personal, subject to provisos as to the incumbrance, conveyance or transfer of certain property[.]"). We cannot disregard this material change in the law. Although we recognize the longstanding principle that one cannot contract with oneself, we do not agree this was the case when the 1920 deed was executed. By 1920, Texas law recognized a wife's legal identity separate from her husband, her authority to contract and to solely manage, control, and dispose of her separate property, and her ownership rights in such property. *See Price v. Price*, 732 S.W.2d 316, 317 (Tex. 1987) (recognizing that the Married Women Acts of the nineteenth and twentieth centuries "gave wives the rights to own, acquire and dispose of property; to contract; and, to sue in respect to their property and contracts. Most importantly, many of the statutes specifically abolished the doctrine of the oneness of husband and wife.").

With this framework in mind, and upon a close examination of *Riley*, we reject Appellants' interpretation that *Riley* imposed an additional third requirement—that a wife could convey her separate property to her husband only through a third party, and that failure to do so rendered the deed void. Although Appellants assert that *Riley* remained controlling absent an express legislative abrogation, *Riley* itself addressed only whether such a conveyance was permissible—not

mandatory. As discussed earlier, the Court answered whether a wife could convey her separate real property to her husband by joining with her husband in a conveyance to a third party, while complying with the privy and joinder requirements, then having the third party reconvey the land to her husband. *Riley*, 86 Tex. at 241. The Court answered that this manner of conveyance to her husband was permissible, specifically holding that a "wife had power to make a gift of her separate estate to her husband in the manner suggested in first question certified[.]" *Id*. at 243. *Riley* held that the third-party mechanism was allowed; it did not state it as a requirement.[4] *Id*. And when the Legislature enacted Article 1299 in 1911—after *Riley*—it exclusively listed the requirements of privy and joinder, making no mention of the third-party mechanism that Appellants claim was required for a valid conveyance. In asserting that *Riley*'s third-party purported requirement nevertheless remained "good law," Appellants claim that in its post-*Riley* enactments, the "Legislature ignored the issue of whether a married woman could convey her property directly to her husband[.]" We disagree. The Legislature accounted for the specific granting permutations discussed in *Riley*—joinder and privy—while omitting any purported third-party requirement.

Appellants' reliance on post-*Riley* case law to argue that the third-party conveyance mechanism was required is also unavailing. None of the cited cases provide authority for Appellants' argument that the third-party mechanism was a requirement for a valid conveyance of a wife's separate property to her husband. The cases Appellants rely on are distinguishable, as nothing in the evidence suggests that Norma suffered undue influence or that she was in a compromising position at the time of the conveyance. The cited cases describe circumstances in

---

[4] We also reject Appellants' contention that *Graham* required the third-party mechanism for a valid conveyance from a wife to her husband. In *Graham*, a wife conveyed her separate property to her husband, and the trial court set aside the deed, holding that the conveyance lacked consideration. *Graham*, 76 Tex. at 533. The decision contains no discussion of the third-party conveyance mechanism. *Id*. And in any event, *Graham* was decided in 1890—well before the enactment of the 1913 Married Woman's Act. *Id*.

which third-party conveyances were permitted—not required—and do not support the imposition of an additional validity requirement. *See e.g.*, *Webb v. Webb*, 148 Tex. 405, 407 (1949) (recognizing exception of statutory requirement of joinder and no mention of third-party mechanism, and finding no evidence of undue evidence where husband abandoned wife and the parties had been permanently separated for more than three years and finding conveyance of wife's separate property to husband by deed executed and acknowledged by wife without joinder of husband shortly before divorce became final was valid); *Taylor v. Hollingsworth*, 142 Tex. 158, 160 (1943) (citing *Riley*, 24 S.W. at 395) ("It is true that the husband and wife, by their deed properly acknowledged, *can* convey property to a third person, and such third person *can* convey such property to the husband, either with or without consideration, although the sole purpose of the conveyance is to cause the property to become the property of the husband.") (emphasis added); *Barnett v. Barnett*, 206 S.W.2d 273, 277 (Tex. App—Austin 1947) (citing *Riley*, 24 S.W. at 395) ("The conveyance of February 28, 1945, was executed in the *manner approved by the courts* for a wife to transfer property to her husband, *i.e.*, through a trustee.") (emphasis added); *First M. E. Church South v. Anderson*, 110 S.W. 2d 1177, 1182 (Tex. App.—Dallas 1937) (quoting *Riley*, 24 S.W. at 395) ("[O]ur Supreme Court holds that a wife, through the intermediary of a third person, *may* make a valid gift to the husband of her separate property by joining with her husband in a deed to the third party who, in turn, deeds to her husband. 'Upon this subject,' the court said: 'The doctrine is now firmly established in equity that she [the wife] may bestow her separate property, by appointment or otherwise, upon her husband, as well as upon a stranger.'") (emphasis added).

For these reasons, Appellants' reliance on *Riley* and its progenies is misplaced. Appellants have cited no authority holding that a wife's conveyance of her separate property to her husband is void for failure to use a third party when the statutory requirements of privy and joinder are

11

satisfied, and we are aware of none. Appellants also do not explain how this purported common law coverture restriction is constitutional and ask this Court to invalidate the 1920 deed based on noncompliance with that restriction.[5] *See Wessley*, 736 S.W.2d at 627 (holding coverture requirements unconstitutional). We decline to do so.

We reject Appellants' arguments to invalidate the 1920 deed and hold that the conveyance remains valid.[6]

At the time of the 1920 conveyance, E.H. held no ownership interest in Norma's separate property, having conveyed his entire interest to her in 1912. When E.H. joined the conveyance to satisfy the then-existing coverture requirements, he conveyed nothing to himself and did not contract with himself.[7] *See Guerra v. Garcia*, 258 S.W. 531, 531 (Tex. App.—San Antonio 1924, writ dismissed w.o.j.) (recognizing that a "grantor in a conveyance can only pass such title as the grantor owns at the date of the conveyance").

The trial court did not err by denying Appellants' summary judgment on their title claims. Issue One is overruled.

---

[5] Although the privy and joinder requirements of Article 1229 were later held unconstitutional, we do not reach that issue. Appellants do not seek to invalidate the 1920 deed on the basis of Article 1229's unconstitutionality, nor does any party argue that the deed is invalid for noncompliance with Article 1229's requirements; instead, both sides agree that the 1920 deed complied with Article 1229 requirements.

[6] We further clarify that our holding that the conveyance remains valid does not rest on the deed's compliance with Article 1229's privy and joinder requirements. No party seeks to invalidate the conveyance for failure to comply with Article 1229, and we do not reach the question of constitutionality.

[7] Because we reject the argument that E.H. contracted with himself, we likewise reject Appellants' arguments that the deed lacked mutual assent and consideration on that basis. We further note that the 1920 deed expressly recites consideration, stating: "That the said parties of the first part, for an in consideration of the sum of ten Dollars, of the United States of America . . . paid by the said party of the second part, the receipt whereof is hereby acknowledged[.]" And, as Appellees point out, a wife could validly convey her separate property without statutory compliance if she obtained court approval in circumstances where "the husband shall refuse to join in." Tex. Rev. Civ. Stat. art. 4621 (1913).

**B. The trial court's summary judgment rulings on the affirmative defenses**

In their second issue, Appellants argue that "[b]ecause the 1920 Archer Deed is void, the trial court also erred in granting summary judgment on Appellees' affirmative defenses of laches, limitations and waiver." They assert that "Appellees raised the affirmative defenses of laches, limitations and waiver based on the premise that contracts in violation of the coverture statutes were merely voidable." According to Appellants, the affirmative defenses are inapplicable for three reasons: (1) they apply only if the 1920 deed was voidable (not void); (2) "it is the failure to adhere to the common law on contracts that renders the 1920 Archer Deed void ab initio, and thus no subsequent action was required to invalidate it[,]" and (3) "the 1920 Archer Deed did comply with the then-existing requirements of the coverture statutes (the husband joined and a third party privily acknowledged that the conveyance was the wife's intent). And even if it did not comply the coverture statutes, that failure would have rendered the 1920 Archer Deed void, not voidable."

Because Appellants' arguments depend entirely on the premise that the 1920 deed is void, and because we hold that the 1920 deed is valid, their contentions necessarily fail. In addition, Appellants do not challenge the substantive merits—the elements—of laches, limitations, or waiver. Apart from the void-versus-voidable argument, they neither address whether Appellees established the required elements of those defenses nor cite authority or provide analysis showing how Appellees failed to do so.[8] Accordingly, any error that may have occurred in the trial court as to whether the affirmative defenses were conclusively established, is waived. *See* Tex. R. App. P. 38.1(i) ("The [Appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Jonson v. Duong*, 642 S.W.3d 189, 194 (Tex. App.—El Paso 2021, no pet.) ("[W]hen an appellant does not adequately brief an

---

[8] Appellants merely argue: "Additionally, the trial court erred by granting Appellees' motion for summary judgment on their affirmative defenses because no evidence supported one or more elements of each defense."

issue on appeal in accordance with Rule 38.1, any error that may have occurred in the trial court is waived") (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880–81 (Tex. 2010)). Issue Two is overruled.

## IV. CONCLUSION

We affirm.

MARIA SALAS MENDOZA, Chief Justice

July 7, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.